The next matters on our calendar this morning are two tandem cases, number 2353 Lev v. Annucci and 2386 Lev v. Lewin. We have Dallas LaPierre arguing for appellant. Good morning, Your Honors. This is Dallas LaPierre. May it please the Court, my name is Dallas LaPierre. We're here today, Your Honors, to ask that this Court reverse the District Court's grants of the summary judgment motion in Lev v. Annucci and the motions dismissed in Lev v. Colvin for three reasons. First, Your Honors, that the District Court erred in finding that the grievance procedure does not or does apply to Mr. Lev's suit wearing his disposition, I'm sorry, his placement in the AOSU as a juvenile and the RMHU as an adult was a disposition of disciplinary proceedings, which is specifically non-grievable. Two, because the grievance procedure, even if it did cover the disposition of Mr. Lev's disciplinary proceedings, would not be available due to the complexity of the procedure and the severity of Mr. Lev's mental health issues in light of his isolation. And finally, Your Honors, because the District Court erred in shifting the burden of proving the availability of the grievance procedures to Mr. Lev rather than to the defendants who asserted that particular affirmative defense. Your Honors, before I continue, I'd like to ask any questions you may have. Excuse me, Mr. LaPierre, Judge Katzmann has a question for you. Thank you, Judge Carney. We received a correspondence last evening from your adversary, and in it she informed us that it is my right to inform the court of an update to plaintiff's custodial status. In the course of preparing for argument, I learned this morning that plaintiff was released from doc's custody on December 3, 2020. Because he served his maximum sentence in doc's custody, he was released outright and is not subject to ongoing community supervision. What does that do for your case? Your Honor, at this time, Mr. Lev has been released from custody, and that does obviously mean that there may be some some mootness as to the declaratory or injunctive relief in the cases, Your Honor, but it does not affect the move for damages as a result of his confinement. Wait a second, excuse me, I thought there was no damages claim. I thought both of the complaints underscored and highlighted that there was no damages claim, that it was a claim for injunctive relief. Did I overlook something? Yes, Your Honor, my understanding is that the case as a minor did in fact seek damages. I believe the complaint as an adult did not, and Your Honor, that is my understanding from having reviewed the case pleadings in preparation for this argument. Can you point us to where that would be shown in the appendix? Your Honor, it should be in the complaint, and for some reason my computer's internet has utterly failed, and the document has disappeared from in front of me, so I cannot point you to the specific page, but it should have been in the complaint included in the appendix. Thank you. Let me ask another question. I understand that Mr. Lev was released at the beginning of December over two months ago, and yet we just learned about this last night. Were you aware of his release? Yes, Your Honor, I was aware of his release. I just do not believe it has any effect on this appeal. The question is whether or not Mr. Lev's suit was barred by the PLRA. The PLRA applied the time of filing, even if it does not apply now. His grievance had to do with the conditions of his confinement, and the primary complaint that I have studied, he was seeking to be released or have changes in conditions of confinement. He had filed a grievance seeking changing conditions. That was clearly the second complaint, but I guess the appendix I have has to do with 2352 and not 2386. Yes, Your Honor, if I may, I can explain the brief history and that will explain exactly the discrepancy I believe you are finding here, Your Honor. The issue with Mr. Lev was a juvenile, adjudicated delinquent with severe mental illness from a very young age who was placed in Hudson Correctional Facility. When he was placed there, he suffered a disciplinary charge for seeking medication, and as a result, he was placed in the AOSU, that's the Adolescent Offender Segregation Unit, as a disciplinary disposition. The first case, Lev v. Lewin, was filed. There was a temporary restraining order that was converted to a preliminary injunction to remove Mr. Lev from the AOSU and also seeking damages related to the damage to his mental health that and Mr. Lev was ordered removed from the AOSU. Unfortunately, shortly thereafter, Mr. Lev was aged out of the juvenile facility. He was transferred to Five Points, and once he arrived there, he received another disciplinary discharge, I'm sorry, disciplinary charge and was placed in the RMHU, another segregation unit, as a result of that hearing. At that point, there was a second... I'm sorry, I've lost your voice. I apologize. I think I broke up for a second. The second case was filed for the purpose of removing Mr. Lev from the RMHU segregation to basically enforce the initial preliminary injunction that applied at the juvenile level at the adult level. However, the original case still moves forward, which count three of which is for punitive damages against all the defendants, but placement of Mr. Lev in confinement as a result of a disciplinary discharge, or I'm sorry, disciplinary disposition. You know, I think it would be helpful to me, I hope my colleagues as well, if you and the state were both to file letters commenting on the effect on your cases of Mr. Lev's release. Your Honor, we're more than happy to file any additional... Yeah, concurrent letter briefs, five pages long, double-spaced, to be filed within a week of today, end of business, both from you and the state, please. Does that work for you, my colleagues? Is there anything you would like to add or modify? Sounds like a good idea to me. Okay, thank you very much. Can I ask a question of mine, not necessarily of others? You know, assuming that the plaintiff is right, that his claims are non-grievable under Section 701.3.e.2, wouldn't they nonetheless be subject to a separate system of administrative appeals for claims? In other words, hasn't the plaintiff failed? Why hasn't the plaintiff failed to exhaust the scope of 701.3.e.2? Yes, Your Honor, and typically that would be correct, Your Honor. The issue of any due process claims with a disciplinary proceeding, any concerns with how that proceeding occurred, would be exhaustible under the PLRA through the appeal process, rather than through a grievous procedure. The concern here, Your Honor, is that this is not a case where Mr. asserts that there was some due process problem with the procedure itself that was used to issue the disposition that's sent to the AOSU. It's simply that the disposition itself has a result that is deleterious and in violation of the Constitution, and that is why the claim arises. So not having the ability to assert a due process claim and having read the grievance procedure and being told that that disposition is ungrievable, it is simply that Mr. Lev falls into a very narrow case that, as written, is not grievable and is not subject to appeal of the disciplinary proceeding, Your Honor. And even were it grievable, it certainly cannot be true that it's available under Ross for Mr. Lev in light of his severe mental illness, as it has degraded at his long term isolation as a result of the disciplinary disposition, Your Honor, given its complexity and given what appears to be a clear interpretation that it is simply not available. Mr. LaPierre, go ahead. Judge Katzmann, please go ahead. I think page 31 of the appendix in this is where the plaintiff may have alleged claim for damages. I'm looking at page 31 of the Lewin appendix, not the other appendix, and I see a claim for punitive damages in count three and account for attorney's fees, but I'm not seeing compensatory damages for time spent. Mr. LaPierre, could you help out? Do you have better access now to the appendix or still not? I do not, Your Honor, but I do know that count three is the claim for punitive damages and that is the damages claim at issue, Your Honor. So there's no count for compensatory damages. There's no request for compensatory. It's simply it's punitive damages based on constitutional violation. Yes, Your Honor. From my memory, there's only a punitive damages claim. Okay, thank you. Your time has expired. You reserved several minutes, three minutes, for rebuttal by your colleague, Ms. Cantolina. Is that right? Yes, Your Honor, and thank you very much for your time. Thank you very much. We'll hear from the state. Good morning, Your Honors. Can you hear me? Yes. Okay, wonderful. May it please the Court, Sarah Rosenbluth for Appellees. I'd like to begin with this threshold issue of mootness. As I wrote to the Court yesterday, and I'm happy to elaborate on in a letter brief, the plaintiff was released from custody on December 3rd, so he's no longer in the RMHU that is the subject of the appeal, no longer in custody, and not on parole or any other form of community supervision. That certainly moots the five points appeal, the 352 appeal on page 31 of that appendix. He says in bold font, plaintiff does not request monetary damages. He makes exceedingly clear that it's only a complaint for injunctive relief, and so there's no realistic claim that he continues to have a personal stake in the outcome of that litigation. As Your Honors noted, there is a claim for punitive damages in the Hudson appeal. I believe that means that it's still a live case, but I will further research that and elaborate on that in our letter brief. Unless the Court has any further questions about the five points appeal, I'll focus instead on the Hudson appeal. Very good. Okay, thank you. As for the Hudson appeal, plaintiff was indeed required to file agreements concerning the claims raised in the Hudson complaint, and DOCS rule 701.3 does not provide otherwise. That rule provides only that the outcome of a disciplinary proceeding cannot be grieved because a separate administrative appeals process exists to resolve those complaints. Case law from both this Court and New York State Courts squarely foreclosed plaintiff's argument and made clear that inmates are required to grieve conditions of confinement claims such as the ones at issue before bringing a 1983 action. As this Court said in Davis, which we cite in our brief, quote, while the grievance procedure cannot be used to challenge the decision in a particular disciplinary proceeding, it may be used to challenge the manner in which the sanction is imposed. Plaintiff's complaint, and I believe Mr. LaPierre just said that he's not complaining about the decision at any particular disciplinary proceeding, but rather the manner in which the sanctions were implemented. In particular, as count one of the Hudson complaint states, plaintiff seeks relief for, quote, unconstitutional conditions of confinement in the adolescent offender separation unit, and that's at Hudson appendix page 30. A conditions of confinement claim is the quintessential type of claim that must be raised through the grievance process before commencing an action in federal court. And as Judge Kasman just noted, if plaintiff were right that his claim were not grievable, he would instead have been required to file an administrative appeal from any one of the five disciplinary proceedings that he alleges he was subject to, and he had never, at no point did he ever argue that he properly exhausted by appealing any of those decisions. Plaintiff also failed to demonstrate any issues of fact with regard to whether the grievance procedure at issue is, quote, essentially unknowable. Plaintiff effectively argues that even if rule 701.3 did not prevent him from filing a grievance, his reasonable interpretation to the contrary excused his failure to do so. Is it your, just so I'm clear, is it your position that section 701.3e2 never applies to an inmate's complaints about the conditions of confinement? That's correct, Your Honor. It's intended to indicate that, it's intended to indicate that if you have a complaint about the conduct of the hearing, you know, a due process complaint, for example, that is dealt with through the administrative appeals process and not the grievance procedure. And that is confirmed by this court's case in Ortiz from 2004 and New York State judicial interpretations as well. How do you reconcile that position with the broad language of the legislation, which encompasses, and I'm quoting, I quote, any individual decision or disposition resulting from a disciplinary proceeding? And even in Ortiz, we held that while a grievance procedure cannot be used to challenge the decision in a particular disciplinary proceeding, which results in a sanction, it may be used to challenge the manner in which the sanction is imposed. That's right, Your Honor. And Plaintiff here is lodging a complaint against the manner in which the sanction was imposed. He is very clearly raising a conditions of confinement claim, and those are claims that are exactly what the grievance process exists to deal with. And even if he, you know, had a reasonable good faith interpretation that the reg at issue precluded his grievance, the Supreme Court has expressly rejected that view, saying that when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion, and that's from the Ross case. And Rule 703, I'm sorry, 701.3 itself explicitly states that if an inmate is unsure whether an issue is grievable, he or she should file a grievance, and the question will be decided through the grievance process. Plaintiff himself successfully availed himself of the grievance process while at Hudson on several occasions, showing that the process was not, in fact, unknowable or unknown to him. Finally, the question of whether mental illness can or did render administrative remedies unavailable is not properly before the court. Plaintiff expressly waived this argument in the litigation. Unless the court has further questions, I'll rest on the brief and the letter roof to be submitted within a week. Thank you very much. Thank you. I understand that Ms. Cantolina is presenting rebuttal on the left side. Is that right? Yes. Yes, Your Honors. May it please the court, my name is Kate Cantolina. So, our essential issues here are first that our decision about what that grievance process, about what was required for that process for 703 was informed by Giano V. Gord, and Giano V. Gord stated that it could be reasonably interpreted to read, that regulation could be reasonably interpreted to read that that grievance process was altogether unavailable. And it is true that Ross overturned the idea of a reasonable or of a mistake being an exception to the exhaustion process. But what Ross didn't overturn was the implied acceptance of that interpretation available in Giano V. Gord. Furthermore, if this is something that could be reasonably interpreted another way, this just exacerbates the fact that Mr. Lev was mentally ill, and because he was mentally ill, so severely mentally ill, he can't be expected to avail himself of something that a reasonable, non-mentally ill person would be confused about. And the court... So the state says that you, that that argument was waived at the five points litigation and was failed to preserve in the Hudson litigation. What's your answer to that claim? Yes, Your Honor. We don't... First of all, we haven't found the defense to have cited to any case law. It was a misstatement on the record, but it hasn't been... We haven't failed to preserve the argument. We've been arguing it all along. There was a misstatement in front of the district court that I believe arose out of a confusion over which specific case was being referred to, because the fact is that at Hudson, we aren't arguing that he was unable to avail himself of the process. We're arguing that Edward's condition significantly deteriorated from the time that he was at five points to the time that he got... Or from the time that he was at Hudson to the time that he got to five points. And he was placed in solitary confinement, which we have the literature that shows that this caused his condition to deteriorate significantly. And in conclusion, unless there are any more questions, I just want to reiterate that we're asking this court to reverse and remand. I have a question. Are you saying there was a misstatement in the district court or a mistranscription of a statement that was made? No, Your Honor, not a mistranscription. It was a misstatement from our counsel. The court asked him if we were saying that he wouldn't have been able to, and he believed... My understanding, Your Honor, is that he believed that he was being asked about the Hudson case rather than the five points case. Thank you. Very good. Well, I believe that concludes your time. Thank you both for your... Thank you all for your arguments. We will reserve decision, and we look forward to receiving your letter briefs next week.